United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE PASCAL,<br>    Plaintiff,<br>v.<br>CONCENTRA, INC.,<br>    Defendant. | Case No. 19-cv-02559-JCS<br><br>**ORDER DENYING MOTION TO STAY PENDING FCC GUIDANCE**<br><br>Re: Dkt. No. 26 |

## I. INTRODUCTION

Plaintiff Lawrence Pascal brings a putative class action against Defendant Concentra, Inc. ("Concentra") under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, asserting that Concentra has violated the TCPA by sending text messages using an automatic telephone dialing system ("ATDS") without the consent of recipients. Presently before the Court is Concentra's Motion to Stay Pending FCC Guidance ("Motion"), in which Concentra asks the Court to stay the case under the primary jurisdiction doctrine or its inherent authority because the Federal Communications Commission ("FCC") may issue an order soon addressing what constitutes an ATDS under the TCPA. The Court finds that the Motion is suitable for determination without oral argument and therefore vacates the hearing set for **November 1, 2019** pursuant to Civil Local Rule 7-1(b)**.** For the reasons stated below, the Motion is DENIED.[1]

## II. BACKGROUND

The TCPA makes it unlawful to call a cellular telephone number using an ATDS without the prior consent of the recipient. 47 U.S.C. § 227(b)(1)(A). The statute defines an ATDS as

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

"equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator; and . . . (B) to dial such numbers." 47 U.S.C. § 227(a)(1). It also vests the FCC with the authority to implement the restrictions of the TCPA. 47 U.S.C. § 227(b)(2). Exercising that authority, the FCC has issued a series of orders that address what constitutes an ATDS, including most recently, an order issued in 2015 ("the 2015 Order"). *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 (2015); *see also Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1045 (9th Cir. 2018), cert. dismissed, 139 S. Ct. 1289 (2019) ("In a series of rulings, from 2003 to 2015, the FCC determined that predictive dialers and other new technology qualified as an ATDS, even if they did not generally generate or store random or sequential numbers."). The definition of ATDS in the 2015 Order, however, was set aside as overbroad by the D.C. Circuit in *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687 (D.C. Cir. 2018).

In the wake of *ACA*, the FCC solicited public comment to address what constitutes an ATDS in light of that decision. *See* Request for Judicial Notice ("RJN"), Ex. A (Public Notice dated May 14, 2018 entitled "Consumer and Governmental Affairs Bureau Seeks Comment on Interpretation of the Telephone Consumer Protection Act in Light of the D.C. Circuit's ACA International Decision").[2] However, the Ninth Circuit resolved the definition of ATDS without waiting for new guidance from the FCC in *Marks v. Crunch San Diego, LLC*, which it decided on September 20, 2018. Concluding that the FCC's prior orders interpreting what sort of device qualified as an ATDS were no longer binding following *ACA*, the Ninth Circuit looked directly to the statute to define the term. 904 F.3d at 1049-1050. Finding the language of the statute to be ambiguous, it looked to the context and structure of the statutory scheme to determine Congress's intent. *Id*. at 1050-1053. It concluded that an ATDS means "equipment which has the capacity – (1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator – and to dial such numbers automatically (even if the system must be

---

[2] Concentra requests that the Court take judicial notice of two public notices issued by the Commissioner of the FCC and a dissenting statement in an FCC declaratory ruling. The Court GRANTS Concentra's request under Federal Rule of Evidence 201(b)(2).

2

turned on or triggered by a person)." *Id*. at 1053.

Following *Mark*, the FCC issued another public notice, this time seeking public comment addressing the meaning of ATDS in light of *Marks*. *See* RJN, Ex. B (Public Notice dated October 3, 2018 entitled "Consumer and Governmental Affairs Bureau Seeks Comment on Interpretation of the Telephone Consumer Protection Act in Light of the Ninth Circuit's *Marks v. Crunch San Diego, LLC* Decision"). To date, no further guidance regarding the definition of "ATDS" has been issued by the FCC.

## III. ANALYSIS

### A. Whether the Case Should be Stayed Under the Primary Jurisdiction Doctrine

"Primary jurisdiction is a prudential doctrine that permits courts to determine 'that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch.'" *Astiana v. Hain Celestial Grp*., 783 F.3d 753, 760 (9th Cir. 2015) (quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114) (9th Cir. 2008). "The doctrine is not an avenue for courts to 'secure expert advice' from administrative agencies 'every time a court is presented with an issue conceivably within the agency's ambit.'" *Izor v. Abacus Data Sys., Inc*., No. 19-CV-01057-HSG, 2019 WL 3555110, at *2 (N.D. Cal. Aug. 5, 2019) (quoting *Brown v. MCI WorldCom Network Servs., Inc*., 277 F.3d 1166, 1172 (9th Cir. 2002)). "Rather, it is only appropriately invoked in cases involving 'an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency.'" *Id*. (quoting *Brown v. MCI WorldCom Network Servs., Inc*., 277 F.3d 1166, 1172 (9th Cir. 2002)).

The Court finds that the primary jurisdiction doctrine does not support a stay for the reasons stated by Judge Guilliam in *Izor*, where he explained:

> the FCC released a Public Notice seeking comment on the issue in May 2018. . . . But the Ninth Circuit has since definitively answered the question. *Marks v. Crunch San Diego, LLC* held that the term ATDS "means equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." 904 F.3d 1041, 1053 (9th Cir. 2018). *Marks* issued on September 20, 2018, months after the FCC began seeking public

3

> comments on the what constitutes an ATDS. *Marks* thus is controlling authority in the Ninth Circuit and is binding on the Court. And the Ninth Circuit's resolution of the issue without waiting for FCC guidance further demonstrates that the issue (1) is no longer a matter of first impression, and (2) is not "a particularly complicated issue" that merits waiting for FCC guidance. See *Brown*, 277 F.3d at 1172.

2019 WL 3555110, at *3 (N.D. Cal. Aug. 5, 2019). Further, the fact that the FCC issued another notice seeking public comment after *Marks* was decided does not change the Court's conclusion. As Judge Guilliam pointed out, since that second notice was issued, "the Ninth Circuit has confirmed that Marks is the law of the Ninth Circuit. *Id*. (citing *Deguid v. Facebook, Inc.*, 926 F.3d 1146, 1150 (9th Cir. 2019) (holding that the *Marks* "definition governs this appeal")).

This Court, like the court in *Izor*, declines "to hold that the state of the law is so unclear that this case must await FCC guidance when the Ninth Circuit has repeatedly found otherwise." *Id*. The primary jurisdiction doctrine does not justify a stay in this case.

### B. Whether the Case Should be Stayed Under the Court's Inherent Authority

To determine whether a court should exercise its discretion to enter a stay under its inherent authority, the court considers the following three "competing interests": (1) "the possible damage which may result from the granting of a stay;" (2) "the hardship or inequity which a party may suffer in being required to go forward;" and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp*., 398 F.3d 1098, 1110 (9th Cir. 2005). "[I]f there is even a fair possibility that the stay for which [the requesting party] prays will work damage to [someone] else," then the party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward." *Landis v. N. Am. Co*., 299 U.S. 248, 255 (1936).

The factors set forth above do not support a stay. With respect to the first factor, there is a fair likelihood that Plaintiffs will be damaged because of the length of the stay, which is indeterminate. *See Izor v. Abacus Data Sys., Inc*., 2019 WL 3555110 at *3 (noting that "the stay Defendant seeks runs a serious risk of being 'essentially indefinite, since there is no clear indication that any FCC action is on the horizon.'") (citing *Larson v. Harman Mgmt. Corp*., No. 1:16-cv-00219-DAD-SKO, 2018 WL 6459964, at *4 (E.D. Cal. Dec. 10, 2018) (rejecting the exact same basis for a stay and explaining how a stay could "indefinitely delay resolution" of the

4

case)); and citing *Edwards v. Oportun, Inc.*, 193 F. Supp. 3d 1096, 1101 (N.D. Cal. 2016) (finding an indefinite stay presents a "fair possibility of harm" to plaintiff); *Lathrop v. Uber Techs., Inc.,* No. 14-cv-05678-JST, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016) (concluding that plaintiffs in putative class action may "suffer prejudice from a stay because the case would extend for an indeterminate length of time, increase the difficulty of reaching class members, and increase the risk that evidence will dissipate")); *Pieterson v. Wells Fargo Bank, N.A.*, No. 17-CV-02306-EDL, 2018 WL 3241069, at *5 (N.D. Cal. July 2, 2018) (declining to stay case under inherent authority pending issuance of FCC order based, in part, on the fact that issuance of such an order by the FCC following a call for public comment "can take years").

In light of the hardship associated with an indefinite stay, Concentra must make a clear showing of hardship in the absence of a stay (the second factor), but it has not done so. Concentra attempts to make such a showing based on the fact that in this case, in contrast to *Izor* and *Pieterson* (in which the courts declined to exercise their inherent authority to impose a stay), only a single claim is asserted and that claim requires the use of an ATDS. Thus, it argues, if the definition of "ATDS" is changed by a future FCC order, it may turn out that Plaintiff does not have a viable claim and Concentra will have been needlessly burdened by engaging in discovery and trial preparation based on the definition that is currently binding in the Ninth Circuit. The Court rejects this argument.

First, Concentra's argument as to the possibility that a future FCC order will be dispositive of Plaintiff's claim is not supported by any specific explanation of *how* the possible changes in the definition of an ATDS will be relevant to this case. Concentra suggests that as a result of the FCC's order – which may offer additional guidance as to the amount of human intervention required or overturn *Marks* as to whether an ATDS requires a device with the capacity to call numbers produced by a random or sequential number generator – Plaintiff's case "might be obviated." Even assuming Concentra is correct in its prediction that the FCC will adopt a narrower definition of "ATDS" than the one that has been adopted in the Ninth Circuit,[3] however,

---

[3] The Court notes that Concentra's reliance on the public positions taken by FCC Commissioner O'Reilly and FCC Chairman Ajit Pai to show that the FCC is likely to narrow the definition of the

5

it points to no facts about the technology that was used in this case which might establish that Plaintiff's claim would likely fail under such a definition.

Second, the Supreme Court has made clear that "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255. As Judge Guilliam explained in *Izor*:

> the mere possibility of intervening law on a simple factual issue, particularly when the Ninth Circuit has already reaffirmed *Marks*, does not amount to a "*clear case* of hardship or inequity in being required to go forward." *See Landis*, 299 U.S. at 245–55 (emphasis added). And the notion that it would be inequitable for this case to proceed is undermined by both *Marks* and *Duguid*, as in each case the Ninth Circuit remanded for further proceedings, apparently anticipating that the cases would go forward. *Marks*, 904 F.3d at 1053; *Duguid*, 926 F.3d at 1157.

2019 WL 3555110 at *4; *see also Larson v. Harman Mgmt. Corp.*, 2018 WL 6459964, at *5 ("Where defendants have not identified any specific harm beyond the cost of litigation, it has been held that 'being required to defend a suit, without more, does not constitute a "clear case of hardship or inequity" within the meaning of *Landis*.'") (quoting *Lockyer v. Mirant Corp.*, 398 F.3d at 1112). Therefore, the Court concludes that Concentra has not met its burden as to this factor.

Finally, the Court rejects Concentra's assertion that a stay will advance the "orderly course of justice" and be in the interest of judicial economy because the case might – if the Court and the parties wait long enough – go away when the FCC issues a new definition of "ATDS." Far from advancing the orderly course of justice, a stay in this case would amount to ignoring binding Ninth Circuit authority on a mere possibility that the law may at some point change to Concentra's benefit. *See Larson v. Harman Mgmt. Corp.*, 2018 WL 6459964, at *5 (holding that "[a]lthough future action by the FCC may ultimately impact the applicable law . . . the imposition of a stay would provide little benefit to the orderly course of justice" because "the Ninth Circuit has already

---

ATDS when it issues further guidance is not persuasive. *See* Motion at 6. As Concentra acknowledges, Pai was Commissioner in 2015 and disagreed with the rule that the FCC adopted. Neither the Commissioner nor the Chairman of the FCC rules by edict; rather, the process of issuing guidance is governed by rules and regulations and involves, *inter alia*, consideration of public comment. Publicly held positions taken by the FCC Commissioner or Chairman therefore do not provide a reliable basis for predicting how the law might change when the FCC issues guidance on what constitutes an ATDS.

decided what constitutes an ATDS and other district courts in this circuit have applied that binding authority."). Consequently, entering a stay under the circumstances here would *undermine* the orderly course of justice.

## IV. CONCLUSION

For the reasons stated above, the Motion is DENIED.

**IT IS SO ORDERED.**

Dated: October 24, 2019

JOSEPH C. SPERO
Chief Magistrate Judge