# ZIMMERMAN LAW OFFICES, P.C.

77 West Washington Street
Suite 1220
Chicago, Illinois 60602
Telephone (312) 440-0020
Facsimile (312) 440-4180
www.attorneyzim.com

October 30, 2020

**Via ECM/CF**
Hon. Joseph C. Spero
United States District Court
Northern District of California

      **Re:**    Joint Discovery Dispute Letter – *Pascal v. Concentra, Inc.,* Case No. 3:19-cv-02559-JCS

Dear Judge Spero,

Pursuant to the Court's Civil Standing Orders, Plaintiff Lawrence Pascal ("Plaintiff") and Concentra, Inc. ("Concentra") (collectively, "the Parties") hereby submit this Joint Discovery Letter. On October 23, 2020, Lead Counsel and experts for the Parties and their experts, Drs. Peterson and Chiang, met and conferred by Zoom video conference but could not reach a resolution on the issues below.

**Issue #1**: Whether Concentra must follow Plaintiff's modified sampling protocol, attached as Exhibit "1" calling for Concentra to produce records of 300 phone numbers from the phone logs of text messages that Concentra sent from each platform—Text Recruit and Textedly—to start, and up to a total of 1,000 records from each platform or until the Parties agree that they have reached a statistically significant sample.

Plaintiff's Position: Concentra should be compelled to produce records of 300 phone numbers from each platform's logs to start. Then, after reviewing the responsive documents, Plaintiff should be allowed to seek additional records, up to 1,000 records, or until the Parties agree that a statistically significant sample has been achieved. The Court ordered Concentra to "provide a supplemental response to Plaintiff's interrogatories stating that the list of channels through which it receives consent that it has identified in its interrogatory responses is substantially complete." *See* Dkt. No. 87. In response, Concentra identified a list of 4 channels, 15 subchannels, and 104 Sources. *See* Def's Third Supp. Responses to Pl.'s Interrogs., attached as Exhibit "2" at pp. 13–18. The subchannels are the purported types of consent that range from submission on Defendant's website to outside recruiters. *See* Exhibit "2" at p. 13.

After exchanging sampling protocols pursuant to the Court's order, on October 15, 2020, and after Defendant's production of the Text Recruit logs as ordered by the Court, Plaintiff proposed a modified sampling protocol calling for Concentra to initially produce records of 300 numbers from each of the Textedly and Text Recruit platforms. *See* Pl.'s Modified Proposal, attached as Exhibit "1." On October 23, 2020, the Parties and their experts met and conferred by video conference. Plaintiff's expert, Dr. Petersen, explains that "[t]his number of records [300 from each platform] will provide a sufficient starting point for determining the distribution of phone numbers within the subchannels." *See id.*

After meeting and conferring, Concentra would not agree to produce more than 100 records proposed in its original response. However, 100 records will not be sufficient to achieve adequate samples for the 15 subchannels identified by Defendant.

Concentra has asserted, without support, that it would take too much time to obtain the initially requested records of 600 phone numbers. Plaintiff has tried to be sensitive to the time needed for Concentra to perform the search, and has modified his original proposal to account for Defendant's concerns, but Plaintiff cannot agree to only 100 records.

Plaintiff's Compromise: Plaintiff is willing to receive the initial 300 consent records per platform on a rolling schedule, to be produced as follows:

> For each of the Textedly and Text Recruit Platforms:
> First 100 (200 total) provided by November 10, 2020
> Next 100 (200 total) provided by November 25, 2020
> Next 100 (200 total) provided by December 10, 2020

Defendant's Position: The Court ordered Concentra to provide Plaintiffs with a substantially complete list of "channels," with the expectation that a mobile number within a channel would result in common forms of consent evidence. As Plaintiff acknowledges, Concentra identified a list of four channels. Plaintiff, however, instructed Dr. Petersen to propose a sampling protocol involving the 15 "subchannels."

Dr. Peterson was not provided with proper instruction regarding the purpose of the sampling protocol, the type of evidence that would be collected, or what conclusions would be derived from the evidence. *See* Exhibit "3." Dr. Peterson's sampling protocol provided, in part, that Concentra "will provide a list of these different methods of consent along with categorizing all telephone numbers into a *mutually exclusive subchannel*" (emphasis added). *Id.* Dr. Peterson confirmed that "[t]he purpose of the sampling protocol is to determine how many phone numbers from each subchannel need to be traced back to source documentation *to determine if consent was given*," and the "[t]he sample is then used to *determine the probability that the other 'non-sampled' phone numbers gave consent*" (emphases added). *Id.*

First, the purpose of this effort is to help Plaintiff, and the Court, to determine whether there is commonality and predominance with respect to the consent evidence such that a class could be certified. It is not to determine whether Concentra had the requisite consent. Second, this effort is about collecting consent *evidence*. It is not about categorizing the mobile numbers into a channel, subchannel or source. Finally, Dr. Peterson, without any explanation or justification, improperly (1) assumed that (A) a single mobile number would fit exclusively within a subchannel;[1] (B) the subchannels are material, as opposed to being arbitrarily created to help Plaintiff to understand the various ways in which Concentra interacts with recruits; and (C) the system used to send the text is somehow relevant to the consent evidence; and (2) ignored that a mobile number could be in both Textedly's and TextRecruit's SMS logs.

After reviewing Dr. Peterson's sampling protocol, Concentra spoke with three different statisticians, each voicing skepticism regarding what role a statistician would play in the sampling effort beyond (1) assisting the parties to randomly select a set of mobile numbers (because of the type of evidence that would be collected), and (2) helping to assure the Court that the sample size would result in consent evidence representative of the class. Concentra's expert, Dr. Chiang, proposed a sampling protocol that attempted to

---

[1] As reflected by the channels, subchannels and sources identified by Concentra, recruits interact with Concentra in a variety of ways over time. For example, a recruit could apply for employment using Concentra's online application system ICIMS (Subchannel 1) and, at the same time, enroll in Talent Connect to receive alerts about other employment opportunities (Subchannel 2), and then interact with a recruiter (Subchannel 15) via email (Subchannel 14) or as a walk-in (Subchannel 8) in connection with the initial employment opportunity or a subsequent one. *See* Exhibit 2 at p. 13. Therefore, Dr. Peterson's proposal that all numbers be categorized into a "mutually exclusive subchannel" will not work here.

address the shortcomings of Dr. Peterson's protocol: (A) the Textedly and TextRecruit SMS logs would be combined and de-duped for sampling, (B) the initial sample size would be 100 mobile numbers to enable the parties to (i) assess consent evidence before expending significant time and resources and (ii) make reasonable adjustments to the protocol before sampling further, (C) if the parties agreed or Plaintiff "identif[ied a] logical justification" for collecting more consent evidence for a second sample set of numbers, Concentra would follow the same protocol for the next agreed upon number of mobile numbers, with input from their experts, and (D) the parties would continue the previous step up to a total number of 750 mobile numbers. *See* Exhibit "4."

Dr. Chiang strongly suspects that the initial sample set, and possibly the next sample set, will inform the parties with respect to the type and variations in the consent evidence, enabling them to determine if additional sampling is needed. Dr. Chiang voiced concern that assuming that the subchannel designation is significant is premature because many of the numbers likely will fit within one or more channels, subchannels and sources because recruits interact with Concentra in a variety of ways over time. With the consent evidence, Plaintiffs and Concentra can label the mobile numbers with the channel(s), subchannel(s) and source(s), and slice and dice the information to assess whether there is commonality across channels, subchannels or sources, or some other criteria.

In response to Dr. Chiang's sampling protocol, Plaintiff proposed a modified sampling protocol that contemplated, in part, an initial sample of 300 mobile numbers from each of Textedly and TextRecruit's SMS logs. Plaintiff remains focused on the subchannel designations, ignoring that the focus of this effort is the *consent evidence* and evaluating whether there is *commonality* and *predominance* such that a class could be certified. In addition, Plaintiff proposed that Concentra identify the channel, subchannel and source for each number, even though Plaintiff can do this using the evidence collected.

To bridge the gap between the parties' proposals and, more particularly, to address Plaintiff's fixation on the sub-channels, Concentra proposed that the Zoom meet and confer include Drs. Peterson and Chiang. Dr. Peterson is focused on collecting a sufficient sample set so that each subchannel has a statistically significant sample size, disregarding that (1) we do not know the size of the data set for each subchannel and (2) the emphasis should be on the inferences and conclusions that can be drawn from the consent evidence. He did so because this is what he was instructed to do, and he did not use independent judgment to determine whether this is an appropriate assignment under the circumstances. Dr. Chiang is focused on the parties being thoughtful about phasing this effort so that Concentra is not unnecessarily spending a significant amount of time and energy to collect consent evidence before the parties can assess what inferences and conclusion might be drawn from the evidence collected. Dr. Chiang agrees that, with the evidence, Plaintiffs will be able to label each mobile number with the channel(s), subchannel(s) and source(s), and attempt to draw conclusions and inferences from these labels and other criteria so that additional sampling can be undertaken if there is a logical justification for doing so.

Contrary to Plaintiff's assertions herein, Concentra did not take the position that it would only produce the consent evidence for 100 mobile numbers. Rather, Plaintiff's approach was accept our modified sampling protocol or we will put the issue before the Court, and ended the call when we could not agree to the unworkable sampling protocol.

Concentra's Compromise:  Concentra is willing to collect the consent evidence for the first 100 randomly selected mobile number from a list of unique mobile numbers that received a text message using the Textedly or TextRecruit platform, and to produce this evidence on a rolling basis. Once Concentra has the first 100 numbers, it will as soon as reasonably possible collect the consent evidence and start producing it to Plaintiff for 10 mobile numbers at a time.

Within one week after Concentra has produced the consent evidence for all 100 numbers, the Parties will Zoom meet and confer to discuss (A) whether there is a logical justification for collecting more consent evidence for a second sample set of numbers, (B) the number of mobile numbers that should be included in the second sample set, with this number not to exceed 250 mobile numbers, (C) whether there is a logical justification for modifying the sampling protocol, and (D) Plaintiff's questions about the consent evidence produced, without Concentra waiving any objections or the attorney-client privilege or any other privilege. Once Concentra has the second set of mobile numbers, it will as soon as reasonably possible collect the consent evidence and start producing it to Plaintiff for 10 mobile numbers at a time. Thereafter, the Parties will repeat the protocol in this paragraph.

**Issue #2**: Whether Concentra must produce documents related to the acquisition and creation of the files and/or lists uploaded to Textedly and Text Recruit.

Plaintiff's Position: Concentra used Textedly and Text Recruit to upload lists of names and phone numbers in order to send text messages. The Court ordered Concentra to produce documents related to the software used to send text messages and methodology for sending text messages. *See* Dkt. 87 ("Issue 2"). However, Concentra did not sufficiently respond to the Court's order. Concentra did not produce any spreadsheets or lists that were input into Textedly and Text Recruit, or the documents relating to their acquisition and creation. Concentra responded by merely stating that it had no responsive documents, but it did not even attempt to document its search. Considering the volume of text messages sent and number of "subscribers" added at specific times and dates, it is nearly impossible that Concentra did not upload large lists of contact information for mass texting. Plaintiff is entitled to know if, as with Plaintiff, Concentra was using data aggregators or consumer information databases to compile the lists used for its campaigns.

Plaintiff's Compromise: Concentra should identify and produce all of the spreadsheets Concentra uploaded to Textedly and Text Recruit. For each of the spreadsheets uploaded to Textedly and Text Recruit, Concentra must state whether it acquired the list from another person and, if so, it must identify that person and state when the list was transmitted to Concentra.

Defendant's Position: Plaintiff has collected "documents related to the software it used to send text messages" directly from Textedly and TextRecruit, and Concentra otherwise does not have responsive "documents" because this information is readily available on Textedly's and TextRecruit's website or within the platform itself. Concentra has produced various screen shots of both platforms in discovery.

With respect to Concentra's "methodology for sending text messages," Concentra has repeatedly explained to Plaintiff that information about the Textedly and TextRecruit platforms has been produced by Textedly, TextRecruit, and Concentra, and Textedly has produced what Plaintiff refers to as the "SMS Logs," which include the uploaded names and phone numbers along with various other categories of information that are the "upload[ed] lists of names and phone numbers in order to send text messages" and "spreadsheets or lists that were input into Textedly and Text Recruit." This data confirms when the mobile numbers were uploaded, and Plaintiff can sort and slice and dice this data to glean whatever lists it wants, including campaign information, dates and times, and text recipients.

Plaintiff further complains that Concentra has not produced "documents relating to their acquisition and creation" of the lists of mobile numbers that were sent texts, *e.g.*, "Plaintiff is entitled to know if, as with Plaintiff, Concentra was using data aggregators or consumer information databases to compile the lists used for its campaigns." These documents and data are the consent evidence that will be collected and produced once the parties have an agreed upon sampling protocol.

Concentra's Compromise: Plaintiff should analyze the data that he has been provided and identify questions about it, or explain why it is reasonable to require Concentra to review possibly hundreds of thousands of emails to look for emails with spreadsheets that include data that is duplicative of what Plaintiff has in his possession.

Plaintiff has agreed to the parties sampling consent evidence rather than Concentra producing millions of pages of documents that may be consent-related evidence. Plaintiff should analyze the consent evidence that is produced and the parties can Zoom meet and confer if Plaintiff has questions about this evidence or believes that there is additional evidence, without Concentra waiving any objections or the attorney-client privilege or any other privilege.

**Issue #3**: Whether Concentra must produce the SMS logs with the "FROM" field included.

Plaintiff's Position: The Court already ordered Concentra to produce its SMS logs. *See* Dkt. 87. However, the SMS logs produced omitted the "FROM" field (the phone number sending the message). This field is needed by Plaintiff's expert to assist in evaluating the system used to send the text messages. Concentra asserts that it does not have access to this information; however, Concentra could obtain the information if it requests it from Text Recruit.

Plaintiff's Compromise: If Concentra authorizes its vendor, Plaintiff will cooperate directly with Text Recruit to retrieve the desired information at its own cost. Plaintiff has already attempted to resolve the issue by speaking with counsel for Text Recruit.

Defendant's Position: Concentra produced a copy of what Plaintiff refers to as TextRecruit's SMS Log. As Concentra explained, the TextRecruit platform does not include a "FROM" field and it cannot produce something that does not exist. Plaintiff did not resolve the issue with TextRecruit, but rather demanded that TextRecruit produce the "FROM" field for the SMS log Concentra produced. TextRecruit has confirmed that it could not efficiently produce another field, if a "FROM" field existed, for Concentra's TextRecruit SMS Log because the TextRecruit platform includes Concentra's and Concentra's affiliated and predecessor companies' data, *i.e.*, there is not a fixed "SMS Log" and TextRecruit would have to manually marry up the fields.

Concentra's Compromise: As previously agreed, Concentra is working to provide Plaintiff with a list of short codes, long codes or phone numbers that are associated with Concentra for the TextRecruit platform. Concentra is also working with TextRecruit to confirm whether there is a TextRecruit field that includes the short code, long code or phone number for each text sent, assuming that this is what Plaintiff is requesting. If there is, Concentra will rerun the SMS log to include this field and produce it to Plaintiff.

Sincerely,

/s/ Thomas A. Zimmerman, Jr.          .  
Thomas A. Zimmerman, Jr.  
Attorney for Plaintiff  
and the putative class  

/s/ Amy L. Pierce                     .  
Amy Pierce  
Attorney for Defendant  
Concentra, Inc.