

Amy L. Pierce
2020 West El Camino Avenue, Suite 700
Sacramento, California 95833
Amy.Pierce@lewisbrisbois.com
Direct: 916.646.8210

April 13, 2021

**VIA CM/ECF**

Hon. Joseph C. Spero
United States Chief Magistrate Judge
Northern District of California

    Re:  <u>Pascal v. Concentra, Inc., Case No. 3:19-cv-02559-JCS</u>
           <u>Joint Discovery Dispute Letter – Fed. R. Civ. P. 30(b)(6) Deposition Topics</u>

Dear Judge Spero:

Plaintiff Lawrence Pascal ("Plaintiff") and Defendant Concentra, Inc. ("Concentra") (collectively "the Parties") submit this Joint Discovery Dispute Letter regarding Concentra's request for a Protective Order in connection with certain topics in Plaintiff's Second Amended Notice of Fed. R. Civ. P. 30(b)(6) Deposition, set for April 15, 2021 ("Second Amended Notice"). (*See* Ex. 1).

On March 9, 2021, Plaintiff served his Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) on Concentra (Ex. 3), and on March 23, 2021, he served his Amended Notice of Deposition ("Amended Notice") (Ex. 2). On March 16 and 29, 2021, the Parties met and conferred about the topics, as required under recently revised Fed. R. Civ. P. 30(b)(6). During each conference, Concentra's counsel requested that the topics be amended to make them more reasonably particular in scope and Plaintiff's counsel agreed to consider amending the topics.

On April 5, 2021, defense counsel provided a draft of this joint discovery dispute letter to Plaintiff's counsel and requested a video meet and confer. The next day, Plaintiff's counsel served their Second Amended Notice, but it only addressed some of Concentra's counsel's concerns. On April 8, 2021, the Parties met and conferred via video conference and resolved certain differences but were unable to resolve the issues addressed below. Concentra is moving forward with the deposition because of deadlines, but limited to Concentra's compromises on the issues below.

**Issue 1:** Whether Plaintiff's Second Amended Notice's deposition topics encompass consent evidence that exceeds the Parties' Consent Protocol.

<u>Concentra's Position:</u> The Parties agreed to be bound by the Court-approved stipulated consent sampling protocol ( "Consent Protocol"). (*See* Dkts. 89, 90). Concentra's initial concern was that the

ARIZONA • CALIFORNIA • COLORADO • CONNECTICUT • DELAWARE • FLORIDA • GEORGIA • ILLINOIS • INDIANA • KANSAS • KENTUCKY • LOUISIANA
MARYLAND • MASSACHUSETTS • MINNESOTA • MISSOURI • NEVADA • NEW JERSEY • NEW MEXICO • NEW YORK • NORTH CAROLINA
OHIO • OREGON • PENNSYLVANIA • RHODE ISLAND • TEXAS • UTAH • VIRGINIA • WASHINGTON • WASHINGTON D.C. • WEST VIRGINIA

4816-0641-5589.1

Hon. Joseph C. Spero
April 13, 2021
Page 2

noticed topics be reasonably particular so that it can properly prepare its witness(es). This concern remains despite amendments, but the amended topics continue to disregard the Consent Protocol.

*Topic 22*. Topic 22 inquires into the "[s]tep by step process for drafting a text message, compiling list of phone numbers, and using Textedly and Text Recruit to transmit such message… including but not limited to: [17 dates]." (Ex. 1). The "including but not limited to" renders this topic overly broad, leaving Concentra without notice regarding how to prepare its witness(es). *See Hunt Valley Baptist Church, Inc. v. Balt. Cty.*, No. 1:17-cv-00804-ELH, 2019 U.S. Dist. LEXIS 7509, *6-7 (D. Md. Jan. 16, 2019) (citations omitted). This was previously Topic 23 in the Amended Notice which only listed 11 dates. (Ex. 2). Plaintiff appears to have revised prior Topic 23 (now Topic 22) to include dates which were part of prior Topic 4 in the Amended Notice. (*See* Exs. 1, 2). By moving dates from prior Topic 4 into Topic 22, Concentra is concerned Plaintiff's counsel interprets "compiling list of phone numbers" as expecting Concentra to further engage in consent evidence collection and review efforts, as objected to in relation to Topic 4, as opposed to general processes.

The inquiry into "compiling list of phone numbers," (which is eerily similar to "files and sources used to input data into Textedly…" from prior Topic 4) appears to be aimed at the source of consent. These lists were the subject of a prior Joint Discovery Letter Brief. (*See* Dkt. 89, Issue #2). The Court denied Plaintiff's request to require Concentra to produce this information "without prejudice to renewal after review of the data collected by the parties, including the data to be provided pursuant to No. 1 above." (*See* Dkt. 90). These "lists" standing alone are not evidence of anything and, otherwise, the data in the lists is in the Textedly and TextRecruit logs in Plaintiff's possession.

More particularly, Concentra objects to Topic 22 because it would require individual analysis into each number on the dates identified to determine where it came from in contravention of the Consent Protocol. This would require an extraordinary amount of work on top of Concentra's production of Consent Evidence, regardless of whether it is produced. This is unnecessary because, as Plaintiff's counsel confirms below, the Consent Protocol produced sample numbers that received texts on the different dates listed. Plaintiff's counsel can ask questions about the Consent Evidence. Rather than notice a topic about particular Consent Evidence, Plaintiff is trying to force Concentra to analyze its evidence by all numbers texted on a certain date without first understanding the evidence produced.

Concentra's Compromise: Concentra requests a protective order holding that Topic 22 be amended (or confirmed) to require Concentra's Fed. R. Civ. P. 30(b)(6) witness to be prepared to testify, generally, about the sources of recruits' mobile numbers, the Consent Evidence, the general process for using Textedly and TextRecruit to send a text message, and other documents produced by Concentra. It appears Plaintiff's counsel now agrees despite their refusal to amend this Topic.

Plaintiff's Position: Topic 22 pertains to Concentra's actions that give rise to Plaintiff's and the other potential Class members' claims. It concerns how Concentra used the Textedly automatic telephone dialing system ("ATDS") and the Text Recruit ATDS. It is highly relevant, and the inclusion of specific dates is meant to lend particularity to the subject. It does not render an otherwise relevant and appropriate topic overbroad. *See Campbell v. Facebook Inc.*, 310 F.R.D. 439, 450 (N.D. Cal. 2015) (topic's inclusion of the phrase "not limited" to was not grounds for quashing deposition).

Hon. Joseph C. Spero
April 13, 2021
Page 3

Topic 22 appeared as a topic in the original Notice of Deposition (Ex.3, Topic 10) and the Amended Notice of Deposition (Ex. 2, Topic 23). Defendant expressed no problem with the topic until receipt of the Second Amended Notice of Deposition. Now that Plaintiff has—not once but twice—taken efforts to amend the topics to cater to Defendant's requests, Defendant takes aim at Topic 22, original Topic 10 (only with certain dates added). Importantly, all of the dates specified in Topic 22 are connected to one (often many) of the random sample numbers selected. For example, 24 out of 300 randomly sampled numbers were uploaded and sent a text on September 11, 2018. 19 of these 24 numbers registered an undelivered text because of an error. Over the course of the next week or so, approximately 100 opt out requests were received based on the September 11, 2018 texts.

Defendant's argument that the sampling protocol prevents Plaintiff from asking questions about the preproduced lists of phone numbers to be called is wrong. First, Defendant conflates document production with deposition topics. Plaintiff's Notices of Deposition are not in themselves requesting production of documents, so Defendant's attempt to rely on the Order regarding Plaintiff's "seek[ing] certain documents," *see* Order (Dkt. # 90), should not limit what subjects can be covered at the deposition. Inquiry regarding the actual preproduced lists Defendant created, obtained, and used is entirely appropriate so Plaintiff can ask questions, such as: Do the lists used to upload numbers still exist? Were they lost or destroyed? If so, when? If they cannot be located, why does Defendant not keep track of them? Were they the same as the files produced already as a claimed source of "consent" or were they something different (such as lists obtained from a different source than the one the "consent" record purports to point to)?

It will assist Plaintiff in making sense of Defendant's production. For example, for the May 3, 2019 date, 8 of the 300 sampled were sent a text all at 1:25:14 p.m. in a mass text blast to 689 phone numbers. These 8 numbers had been uploaded, along with many others, to Textedly within two seconds of each other, between 11:18:02 a.m. and 11:18:04 a.m. on May 3, 2019. While Concentra attributes "consent" to the same alleged source for 4 of the 8 numbers, the other numbers are not so attributed. Plaintiff would like to know whether all 8 were obtained and used from the same source and if so, why Defendant is relying on different consent defenses for the numbers it obtained and used from the same source. It would suggest to Plaintiff (and a reasonable trier of fact) that Defendant even now does not consider the actual source (if all 8 numbers are from that source) to have established the required prior express consent.

Finally, Plaintiff takes this opportunity to renew his request in the October 30, 2020 joint letter for the documents related to the acquisition and creation of the files and/or lists uploaded to Textedly and Text Recruit. *See* Issue #2, Joint Letter, October 30, 2020 (ECF No. 89). In the Court's Order (ECF No. 90), Plaintiff's request for these documents was denied without prejudice to renewal. As it appears by Defendant's adamant protestations regarding the deposition topics that these documents did not turn up or have not yet been produced, Plaintiff renews his request.

Defendant has characterized the prospect of locating the upload files as a "wild goose chase." It has not supported that assertion. Even so, Defendant should keep better track of its records relevant to whether it complies with the law. *See Ellis v. Corizon, Inc.*, No. 1:15-cv-00304-BLW, 2018 WL 1865158, at *5 (D. Idaho Apr. 18, 2018) ("Neither inefficient or insufficient recordkeeping provides a reasonable justification to preclude Corizon from being deposed").

Plaintiff's Compromise: Without waiving any of the foregoing arguments, Plaintiff proposes that Plaintiff be permitted to ask questions regarding the alleged consent sources that have come up in the sample of 300, and in addition, that the deponent, who Defendant has identified as Concentra's Director of Talent Acquisition, not be allowed to refuse to answer any question on which she has knowledge based on her position. This will adequately address Defendant's stated concern regarding preparing the witness for testimony. *Detoy v. City and Cnty. of San Francisco*, 196 F.R.D. 362, 366 (N.D. Cal. 2000) (notice provides the minimum about which the witness must be prepared to testify, not the maximum).

**Issue 2:** Whether Plaintiff's Second Amended Notice deposition Topic 3, as phrased, delves into Concentra's attorney client privileged and work product protected interactions with its counsel related to its collection of Consent Evidence.

Concentra's Position: Topic 3 inquires into "Defendant's search, investigation, preparation, and production of documents in this litigation, in particular with respect to the documents relating to the sample phone numbers, lists and documents used to input data into Textedly and Text Recruit, and records concerning the phone number of Plaintiff's." (*See* Exhibit 2). This topic, as phrased, necessarily exposes Concentra to the risk that its Fed. R. Civ. P. 30(b)(6) witness will inadvertently disclose privileged information. *See Uschold v. Carriage Servs.*, No. 17-cv-04424-JSW (EDL), 2019 U.S. Dist. LEXIS 230037, *10-11 (N.D. Cal. Jan. 22, 2019) (reviewing similar topics on search efforts and noting "[g]enerally, 'discovery on discovery' is disfavored and, to be both relevant and proportional to the needs of the case, a party seeking it 'must show a specific deficiency in the other party's production.'"). This topic is the definition of "discovery on discovery," as confirmed by Plaintiff's counsel below, seeking information that is not discoverable under Fed. R. Civ. P. 26(b).

Concentra's Compromise: Concentra requests a protective order quashing this topic. In the alternative, Concentra proposes that Topic 3 be amended (or confirmed) to require Concentra's Fed. R. Civ. P. 30(b)(6) witness to be prepared to testify, generally, about the business processes used to search Concentra's records for Consent Evidence and the Consent Evidence itself.

Plaintiff's Position: Nothing in Topic 3 is phrased to obtain privileged or protected information. This is not a case where a general rule regarding discovery applies because Defendant has maintained that it would be unduly burdensome to produce all of the documents responsive to Plaintiff's requests regarding Defendant's affirmative defense of prior express consent, and the parties have engaged in a sampling protocol on the production of documents pertaining to Defendant's defense of prior express consent. Questions bearing on the burden in terms of time and costs are relevant to whether it would be burdensome to produce more or all relevant documents.

Questions bearing on whether Defendant located records it chose not to produce and the reasons why are also relevant. Because Defendant may have located documents that negate consent or hurt its defense, Defendant may not have produced them. Plaintiff is entitled to inquire into whether the records produced encompass all of the records Defendant located, and whether Defendant has produced all of the documents and information it intends to rely upon in connection with its express consent defense.

Plaintiff is also entitled to inquire into myriad other issues that may arise under this topic, including whether any records that were produced were obtained from a third party or an affiliate of Defendant and when, whether there were any incidents that resulted in the loss of integrity of the data Defendant stores in its systems, and so on.

Moreover, Defendant appended with each packet of sample records a "cover page" which appears to be a document written by Defendant's attorneys making assertions regarding the documents being produced. To the extent Plaintiff desires to inquire about the representations made in these cover pages, Defendant invited the inquiry into its search process.

Plaintiff's Compromise: Defendant's counsel will be present at the deposition and can object where appropriate if a question calls for protected information. This topic presents no additional obstacle or risk of revealing protected information.

**Issue 3:** Whether Plaintiff's Second Amended 30(b)(6) deposition Topics 20 and 21 seek information that is not relevant to this Action, calls for a legal conclusion, and circumvents the Consent Protocol.

Concentra's Position: Plaintiff alleges that he received a text sent by an ATDS offering him an employment opportunity without his consent. (*See* SAC ¶¶ 2-4, 14-19, 30). Plaintiff does not allege that he received more than one text from Concentra. Thus, inclusion of internal do not call list, national do not call list, and TCPA compliance is overbroad and outside the scope of this case.

Including "internal do not call list" in this topic is an attempt to collect additional information about whether Concentra had consent, circumventing the Consent Protocol. The National Do Not Call List applies to *telemarketers* sending *solicitations*. *See Jones v. Royal Admin. Servs.*, 887 F.3d 443, 448 (9th Cir. 2018) (citing 47 C.F.R. § 64.1200(c)(2)). Plaintiff has not brought a claim for violation of this regulation, Concentra is not a telemarketer, and the text message he received is not a telephone solicitation. *See* 47 U.S.C. § 227(a)(4) (defining the term "telephone solicitation"); *Orea v. Nielsen Audio, Inc.*, No. 14-cv-04235-JCS, 2015 U.S. Dist. LEXIS 54916, *9 (N.D. Cal. Apr. 24, 2015) ("A call attempting to purchase the listener's 'labor and information' is equivalent to a call giving an offer of employment or an opportunity to earn money, and is therefore not a telephone solicitation."). And inquiry into whether Concentra affirmatively complies with a solicitation standard that does not apply to it is inconsistent with Fed. R. Civ. P. 26 and calls for a legal conclusion.

Concentra's Compromise: Concentra requests a protective order holding Topics 20 and 21 are inappropriate in that they seek information outside the scope of Fed. R. Civ. P. 26(b), and Concentra is not required to prepare to testify on these Topics, except as otherwise provided for herein. Concentra proposes that Topics 20 and 21 be amended (or confirmed) to require Concentra's Fed. R. Civ. P. 30(b)(6) witness to be prepared to testify, generally, about Concentra's business practices related to obtaining consent to text recruits and how it honors opt-outs.

Plaintiff's Compromise: Plaintiff is willing to limit topics 20 and 21 insofar as they relate to Defendant's use of internal do not call lists and the national do not call list. However, Plaintiff has alleged that Defendant is liable for willful or knowing violations of the TCPA and reserves the right to make inquiries relevant to that allegation. *See* First Am. Compl. ¶ 33.

Hon. Joseph C. Spero
April 13, 2021
Page 6

| | |
|---|---|
| Respectfully, | Respectfully, |
| */s/ Amy L. Pierce* | */s/ Thomas A. Zimmerman, Jr.* |
| Amy L. Pierce of<br>LEWIS BRISBOIS BISGAARD & SMITH LLP<br>Attorney for Defendant Concentra, Inc. | Thomas A. Zimmerman, Jr.<br>ZIMMERMAN LAW OFFICES, P.C.<br>Attorney for Plaintiff and the putative class |